UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

O'DONNELL & SONS, INC., on behalf
of itself and all persons similarly situated,

                    Plaintiff,

v.

NEW YORK STATE DEPARTMENT
OF TAXATION AND FINANCE, THE
STATE OF NEW YORK, and AMANDA HILLER
in her official capacity as
Acting Tax Commissioner of the New York State
Department of Taxation and Finance,

                    Defendants.

-------------------------------------------------------------x

Index No. 25-08874

CLASS ACTION
VERIFIED COMPLAINT

Plaintiff O'Donnell & Sons, INC. ("Plaintiff"), on behalf of itself and all persons similarly situated (the "Class"), by and through its undersigned attorneys, as and for its Class Action Complaint, alleges as follows:

1. Plaintiff is a New York corporation with its principal address located in Dutchess County at 218 Van Wyck Road, Fishkill, New York 12524. Plaintiff is a member/shareholder and lendee of TEG Federal Credit Union, a member-owned not-for-profit cooperative association incorporated under the Federal Credit Act of 1934 ("FCU Act" or the "Act") with a principal place of business at 1 Commerce Street, Poughkeepsie, New York ("TEG" or the "Credit Union"). Plaintiff obtained a Building Loan Mortgage from TEG, on November 9, 2023, that was secured by a mortgage to the Credit Union on real property located at 80 Church Street, City of Beacon, Dutchess County, State of New York. Plaintiff brings this action on its own behalf and on behalf of all persons who received loans from a federal credit union and paid, on behalf

of such federal credit union, a Mortgage Recording Tax (the "Mortgage Tax" or "MRT" ) set forth in New York Tax Law §253 and §253-a. Plaintiff brings this action in its own right, and/or as an equitable subrogee of TEG.

2. Defendant New York State Department of Taxation and Finance (the "Tax Department") is an agency of the State of New York, organized under §170 of the New York Tax Law. The Tax Department is responsible for administering and enforcing the tax laws of the State of New York, including the administration and collection of state mortgage recording taxes. The Tax Department maintains an office at Office of Counsel, Building 9, W. A. Harriman Campus, Albany, New York 12227.

3. Defendant State of New York is organized under the New York State Constitution and maintains offices c/o the New York State Office of the Attorney General, Robert Abrams Justice Building, 3rd Floor, Albany, New York, 12227.

4. Defendant Amanda Hiller is the Acting Tax Commissioner of the Tax Department and maintains offices at the Tax Department. The Commissioner is responsible for administering and enforcing the tax laws, regulations and policies of the State of New York, including the administration and collection of the Mortgage Tax.

5. The Tax Department, New York State, and Acting Tax Commissioner Hiller are hereinafter referred to as "Defendants."

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims asserted arise under the Constitution and laws of the United States. Jurisdiction is not precluded by the Tax Injunction Act, 28 U.S.C. § 1341, and the doctrine of federal-state comity,

because a "plain, speedy and efficient remedy" for the violation of Plaintiffs' federal constitutional rights is not available in the state courts of New York.

7.      Venue lies in the Southern District of New York, pursuant to 28 U.S.C. § 1391 because the plaintiff resides therein, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## CLASS ACTION ALLEGATIONS

8.      Plaintiff brings this action as a class action, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of all those who obtained mortgage loans within the limitations period, from TEG specifically, and/or from any federal credit union in New York State created pursuant to the FCU Act, and who paid the Mortgage Tax on behalf of that federal credit union.

9.      The class is so numerous that joinder of all members is impracticable. FCUs annually issue thousands of mortgages throughout the state, and class members are believed to number in the thousands. Plaintiff does not currently know the exact number and identity of each member of the Class, but Class members are known to Defendants and can be ascertained through their business records or through the records of county clerks where mortgages are recorded.

10.     Plaintiffs' claims are typical of those of the Class as all members of the Class are similarly affected by Defendants' actionable conduct in violation of federal law as alleged herein.

11.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in class litigation, particularly with respect to credit unions and the claims asserted here, and intends to prosecute

this action vigorously. Plaintiff has no interests antagonistic to, or in conflict with, those of the Class.

12. Common questions of law and fact exist to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are the following:

A. Whether Defendants have wrongfully imposed the Mortgage Tax on TEG and other federal credit unions;

B. Whether Class members were unlawfully required to pay such taxes;

C. Whether Class members have been damaged by Defendants' wrongful conduct.

13. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, because damages suffered by the individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the Class members individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### The New York Mortgage Tax

14. The Mortgage Tax, set forth in New York Tax Law § 253(1), imposes a tax of fifty cents for every $100 of principal debt on each such mortgage of real property situated within New York State. The statute further authorizes and empowers jurisdictions within New York State to impose additional taxes, payable upon the recordation of mortgages. §§ 253-a, *et seq.* Such additional taxes are administered and collected by the Tax Department as those imposed by §253.

15. Although § 253 does not specify, in *haec verba*, who is required to pay the tax, the statute, when read together with other provisions of the New York Tax Law, makes clear that the incidence of and responsibility for the Mortgage Tax falls primarily on the mortgagee, or lender, not on the borrower.

16. More specifically, New York Tax Law § 258 provides that failure to pay the Mortgage Tax results in the following: (1) the mortgage cannot be recorded; (2) it cannot be released, discharged, or received into evidence; and, (3) it cannot be assigned or extended. New York Real Property Law § 291 further provides that any mortgage not recorded is void as against subsequent good faith purchasers or lienholders. Thus, the consequences for failure to pay the Mortgage Tax fall upon the holder of the mortgage, *i.e.*, the inability to record the mortgage, the inability to introduce it into evidence, and the inability to assign or extend it.

17. Furthermore, New York Tax Law § 266 provides that, in the event the Mortgage Tax is not paid, it is the duty of the New York Attorney General to enforce payment of the tax. The statute states that the Attorney General may maintain an action against the lender for payment of the Mortgage Tax. In addition, the Attorney General may bring an action against the borrower, but only "whereby stipulations contained in such mortgage it is made the duty of the mortgagor to pay such tax, or where the mortgagor is liable for the tax imposed under this article." As New York Tax Law § 253(1) does not make the mortgagor liable for the Mortgage Tax, Plaintiff and other members of federal credit unions may be called upon to pay the Mortgage Tax only if they agree to pay it.

18. In addition, New York Tax Law § 254 provides that, with respect to any unrecorded mortgage executed prior to the enactment of New York Tax Law § 253 in 1906, the

5

owner of such mortgage may record such mortgage by recording a statement as to its terms and "paying the tax as herein prescribed."

19. In addition to the above state law provisions, NCUA Rules and Regulations Section 701.21 requires that all federal credit union loans secured by mortgages on real property be recorded to perfect the security interest. Failure of a federal credit union to record the mortgage is a violation of the NCUA's Rules and Regulations.

20. Although the burden of paying the tax falls squarely upon the lender, TEG, together with all other federal credit unions, requires as a condition to obtaining a mortgage loan, that the member/borrower pay the Mortgage Tax on its behalf. At all relevant times, title insurance companies would not issue title insurance policies to either the federal credit union lender or federal credit union borrower unless all fees, expenses, and charges had been paid and the mortgage had been recorded with the recording officer of the county in which the real property was situated.

21. In order to obtain title insurance necessary to obtain any mortgage, Plaintiff and other borrowers are, and were, required by the federal credit unions and their title insurers to pay the Mortgage Tax. More specifically, the standard mortgage commitment letter agreement between federal credit unions, including TEG, and their members (the "Commitment Letter"), requires borrowers to obtain a lender's title insurance policy and to pay all "required" fees, including the Mortgage Tax. Thus, borrowers have only become responsible for the Mortgage Tax because, as a condition of obtaining an insured mortgage lien, they have stipulated to be responsible for it and, by agreeing to pay it, they have become liable for it. In paying the Mortgage Tax, Plaintiff and other borrowers were paying a tax debt for which TEG and other federal credit unions were answerable and which such federal credit unions, in equity and good

conscience, should have paid. Plaintiff's payment of the Mortgage Tax, and that by other borrowers, were under compulsion and for the protection of their property and in discharge of an existing liability. As a consequence, Plaintiff is an equitable subrogee of TEG.

## The Federal Statutory Framework

22. Federal credit unions are cooperative associations organized under the FCU Act. In enacting the FCU Act, Congress authorized the creation of not-for- profit, member-owned and member-managed cooperative associations to perform governmental functions, including, *inter alia*, to make more available to people of small means credit for provident purposes through a national system of cooperative credit, thereby helping to stabilize the credit structure of the United States.

23. Federal credit unions perform other governmental functions as well. They are authorized to invest their funds in obligations of the United States; invest in securities; or make deposits in national banks. *Id.* They are also authorized to act as fiscal agents of the United States and as depositories of public money. 12 U.S.C. § 1767.

24. As an integral part of their federal mission, federal credit unions provide mortgage loans to their members. According to the most recent Annual Report of the National Credit Union Administration ("NCUA"), the federal agency created by Congress to regulate, charter, and supervise federal credit unions, over half of those institutions' loans are mortgage loans. NCUA 2020 Annual Report, p. 2.

25. The issuance of mortgages and their recordation, by federal credit unions, each constitutes an indispensable part of the lending process that such credit unions undertake pursuant to their federal mission. Absent an enforceable security interest, mortgage loans are illusory.

26. To further their federal mission, Congress bestowed upon federal credit unions, including TEG, a virtually complete immunity from state and local taxation. More specifically, § 1768 of the FCU ACT provides in pertinent part:

> The Federal credit unions organized hereunder, their property, their franchises, capital, reserves, surpluses, and other funds, and their income shall be exempt from all taxation now or hereafter imposed by the United States or by any State, Territorial, or local taxing authority; except that any real property and any tangible personal property of such Federal credit unions shall be subject to Federal, State, Territorial, and local taxation to the same extent as other similar property is taxed.

27. By the FCU Act's express terms, federal credit unions and, *inter alia*, their property, are exempt from "all taxation," except for the limited exception of taxation on real and tangible personal property. Thus, under federal law, the State is forbidden from taxing FCUs or their intangible personal property, of which mortgages are a species. In addition, under New York law, the State is forbidden from imposing *ad valorem* taxes on intangible property. New York State Constitution, Article 16, section 3.

28. Thus, if the MRT were deemed to be a tax on the mortgage, inarguably a species of intangible personal property, it would not only be an improper tax on the FCU's intangible personal property under the Act, but it would also violate the provision of the New York State constitution. Accordingly, the New York Court of Appeals has repeatedly held that, despite United States Supreme Court decisions expressly to the contrary, the MRT is not a tax on the mortgage, but upon the privilege of recording the mortgage.

29. Notwithstanding the nearly complete exemption from state taxation provided by the FCU Act, New York State, the Tax Department, and its Acting Commissioner, require TEG and other federal credit unions to pay the Mortgage Tax which, as noted, they pass on to their member borrowers. Such Defendants have taken the public position that the Mortgage Tax,

8

which they characterize as a privilege or excise tax, is valid as applied to TEG and other federal credit unions, and that the Mortgage Tax may be imposed thereon, because, they contend, an exemption from all taxation does not include an exemption from excise or privilege taxes.

30. However, because the Mortgage Tax is not a tax upon real property or tangible personal property, the only exceptions to FCUs' broad exemption, it does not fall within the stated exceptions to the exemptions provided by the FCU Act. Accordingly, the Mortgage Tax may not lawfully be imposed upon TEG or other federal credit unions or mortgages given to secure federal credit union loans.

31. Notwithstanding TEG's nearly complete exemption from state taxation established by the FCU Act, TEG and its members, together with other federal credit unions in New York State and their members, have paid New York State's Mortgage Tax. As noted, TEG and other federal credit unions have not paid the tax from their own funds, but have passed the tax on to their members/borrowers.

32. In connection with its loan, in order to obtain a mortgage, Plaintiff was required to pay a Mortgage Tax in the amount of $5,570.00.

### First New York State Mortgage Tax Litigation

33. On December 3, 2008, another federal credit union, Hudson Valley Federal Credit Union ("Hudson Valley"), filed a claim with the Tax Department for a refund of the Mortgage Tax which it paid in connection with certain "no closing cost" home equity loan mortgages it had provided to its members. On May 8, 2009, the Tax Department issued an "initial informal determination" denying the requested refund. On August 3, 2009, Hudson Valley filed a petition with the Division of Tax Appeals, challenging the May 8th denial of its refund.

9

34. On May 12, 2009, Hudson Valley commenced an action in New York State Supreme Court against the Tax Department, Robert L. Megna, Commissioner of the Tax Department, and the State of New York seeking a declaration that Hudson Valley and its members were not required to pay the Mortgage Tax on two grounds: (1) that, pursuant to FCU Act §1768, set forth above, it was exempt from paying the Mortgage Tax, and (2) that, as an instrumentality of the Federal government, it was immune from state taxation.

35. The lawsuit was supported by the National Credit Union Administration ("NCUA"), the Washington D.C. federal agency and regulator of federal credit unions, who appeared through the United States Department of Justice ("DOJ") as Amicus Curiae and filed a brief in support of Hudson Valley. Also appearing as Amici Curiae were the Washington D.C.-based national federal credit union trade associations the Credit Union National Association ("CUNA"), the National Association of Federal Credit Unions ("NAFCU"), and the CUNA-affiliated Credit Union Association of New York ("CUANY").

36. On May 14, 2010, the New York Supreme Court granted judgment for the Tax Department in a decision entitled *Hudson Valley Federal Credit Union v. New York Department of Taxation and Finance*, 28 Misc.3d 1001, 1004 (S.Ct. N.Y. Co. 2010). Before turning to the merits, the Court rejected the Defendant's argument that Hudson Valley had not exhausted all of its administrative remedies. The Court determined that the case involved issues of purely constitutional and/or statutory interpretation, and that there were no factual issues to be determined by the agency. In particular, it held that it made no difference whether the federal credit union paid the Mortgage Tax itself or "passed such costs on to the mortgagor" and it confirmed "that regardless of who pays the tax, the burden and benefits rests primarily with the mortgage holder." 28 Misc.3d at 1005-06.

37. Turning to the merits, the Supreme Court, citing decisions from the New York Court of Appeals, *Franklin Socy. v. Bennett*, 282 N.Y. 79, 24 N.E.2d 854 (1939) and *Matter of S.S. Silberblatt, Inc. v. Tax Commn. of State of N.Y.*, 5 N.Y.2d 635, 186 N.Y.S.2d 646, 159 N.E.2d 195 (1959), reaffirmed that the Mortgage Tax is a tax upon the "privilege of recording a mortgage" and not a tax on property, and, citing a single United States Supreme Court decision, *United States v. Wells Fargo Bank*, 485 U.S 351, 355 (1988), which interpreted a statutory exemption, not for an entity, but for a species of property, determined that federal credit union mortgages were not exempt therefrom.

38. On November 24, 2010, Hudson Valley along with the Amicus Curiae parties DOJ, CUNA, NAFCU and CUANY appealed to the Appellate Division. On June 2, 2011, in a decision entitled *Hudson Valley Federal Credit Union v. New York Department of Taxation and Finance*, 85 A.D.3d 415 (1st Dept. 2011), that court affirmed the decision of the lower court that the Mortgage Tax was a tax "on the privilege of recording a mortgage", and not a tax on property, relying upon the same Court of Appeals precedent as the Supreme Court.

39. In December 2011, Hudson Valley, with Amici Curiae DOJ, CUNA, NAFCU and CUANY, appealed the Appellate Division decision to the New York Court of Appeals. Joining the other Amici Curiae parties at this time was the Federal Housing Finance Agency ("FHFA"), the conservator for Fannie Mae and Freddie Mac. FHFA, Freddie Mac, Fannie Mae and the Federal Home Loan Banks all have federal statutory exemptions from "all taxation" that are similar to and mirror the exemption in the FCU Act. Accordingly, FHFA had a strong interest in ensuring that the FCU Act was applied in a way that was consistent with the Supremacy Clause of the United States Constitution, United States Supreme Court precedent, and with the statutory

text enacted by Congress, particularly with respect to attempts by state and local officials to impose tax assessments on federally chartered financial institutions based on their transactions.

40. FHFA argued that the Tax Department's position contravenes U.S. Supreme Court precedent holding that federal statutory exemptions from "all taxation" (a) protect the exempted entities from all state and local taxes, including excise taxes, except state taxes that have been expressly permitted by Congress, and (b) apply regardless of how the state tax at issue is structured or characterized.

41. On October 18, 2012, the Court of Appeals affirmed the decisions of the lower courts and, relying upon *Franklin Socy.* and *Silberblatt,* reiterated that the Mortgage Tax was a "privilege tax" imposed on the act of recording the mortgage and not a tax on the mortgage itself. When purporting to explain why the FCU Act's exemption from "all taxation" somehow did not include an exemption from privilege taxes, an issue purely of federal law, the Court cited as precedent a solitary Federal District Court opinion, *Oakland County v. Federal Hous. Fin. Agency*, 871 F.Supp.2d 662, 668–70 (E.D.Mich.2012), which, relying on *Wells Fargo,* determined that a virtually identical exemption from "all taxation" granted to another federal instrumentality, the FHFA, did not include exemption from excise or privilege taxes. The *Hudson Valley* court rejected two other cases that had addressed the same issue and which reached a different conclusion. Although it reaffirmed that, under its prior holdings, the MRT was not a tax upon the mortgage but upon the privilege of recording it, the *Hudson Valley* court nevertheless addressed, in *dictum*, whether the FCU Act prevented the state from imposing a direct tax on an FCU's mortgage. The Court ruled that the Act did not exempt taxes on mortgages (1) because they were not expressly specified in the statute's illustrative list of property that was exempted (unsurprisingly, as at the time the 1934 statute was written, credit

unions were not authorized to issue mortgages), and (2) because, even more improbably, mortgages did not fit within the definition of intangible property under the FCU Act.

42. Having exhausted its state court remedies Hudson Valley elected not to appeal the Court of Appeals decision to the United States Supreme Court.

## POST-*HUDSON VALLEY* FEDERAL JURISPRUDENCE

43. Since the Court of Appeals' decision, the reasoning adopted by the Court of Appeals in *Hudson* Valley, that an exemption from "all taxation" does not include an exemption from excise taxes, as well as the *County of Oakland* decision itself, have been unanimously rejected by Federal courts. *County of Oakland*, the sole authority upon which the New York state court based its interpretation of federal law, was reversed by the Sixth Circuit Court of Appeals. Since then, every federal court, at both the District Court and Court of Appeals level, that has addressed the issue has repeatedly and explicitly rejected the reasoning adopted by the New York Court of Appeals when interpreting identical language in the comparable "exempt from all taxation" statute addressed in *County of Oakland*, including the First Circuit, the Third Circuit, the Fourth Circuit, the Sixth Circuit, the Seventh Circuit, the Eighth Circuit, the Ninth Circuit, the Eleventh Circuit, and the D.C. Circuit,[1] as well as District Courts within the Second

---

[1] *Town of Johnston v. Fed. Housing Fin. Agency,* 765 F.3d 80 (1st Cir.2014); *Delaware County v. Fed. Housing Fin. Agency,* 747 F.3d 215 (3d Cir. 2014); *Montgomery County, Md. v. Fed. Nat'l Mortg. Ass'n,* 740 F.3d 914, 917 (4th Cir.2014); *County of Oakland v. Fed. Housing Fin. Agency,* 716 F.3d 935 (6th Cir.2013); *DeKalb County v. Fed. Housing Fin. Agency,* 741 F.3d 795, 800 (7th Cir.2013): *Vadnais v. Fed. Nat'l Mortg. Ass'n,* 754 F.3d 524 (8th Cir.2014); *Hennepin County v. Fed. Nat'l Mortg. Ass'n,* 742 F.3d 818, 824 (8th Cir.2014); *City of Spokane v. Fed. Nat'l Mortg. Ass'n,* No. 13–35655, 775 F.3d 1113, 2014 WL 7384311 (9th Cir. Dec. 30, 2014); *Montgomery County Comm'n v. Fed. Hous. Fin. Agency,* 776 F.3d 1247, 1257 (11th Cir. 2015); *Bd. of County Comm'rs of Kay County, Okla. v. Fed. Housing Fin. Agency,* 754 F.3d 1025 (D.C.Cir.2014). See also, *City of Bridgeport v. Federal Nat. Mort. Ass'n,* 2014 WL 1612589 (D. Conn. April 22, 2014); *County of Erie, N.Y. v. Federal Housing Finance Agency,* No. 13–CV–284S, 2014 WL 795967 at *3 (W.D.N.Y. Feb. 27, 2014)

Circuit. As the court stated in *County of Erie, N.Y. v. Federal Housing Finance Agency*, No. 13–CV–284S, 2014 WL 795967 at *3 (W.D.N.Y. Feb. 27, 2014), "arguments virtually identical to those raised here have been unanimously rejected by dozens of federal courts." All of these courts have determined that a privilege tax is a tax on the entity, and thus exempted by the statutory phrase "all taxation."

44. Most significantly among those courts, the Sixth Circuit Court of Appeals reached that decision in *County of Oakland v. Federal Housing Finance Agency*, 716 F.3d 935 (6th Cir.), *cert. denied*, 134 S.Ct. 394 (2013), reversing the sole decision upon which the Court of Appeals relied when determining that the Mortgage Tax was not a tax on Hudson Valley as an entity. In that case, the court held that the deed transfer tax at issue, although an excise tax, was placed squarely on the entity. The court stated that "when Congress broadly exempts an entity from 'taxation' or 'all taxation' it means *all* taxation, including so-called excise or privilege taxes." 716 F.3d at 941 (Emphasis in original). As the court stated in *City of Bridgeport v. Federal Nat. Mort. Ass'n*, 2014 WL 1612589 (D. Conn. 2014), "[t]he district court in *Oakland,* now reversed, apparently remains 'the only court in the country' to have agreed with the arguments [defendant] makes in the case at bar."

45. TEG has little financial incentive to challenge the Mortgage Tax, because, although liable for the tax, it does not pay it, but merely passes it on by agreement in the mortgage Commitment Letters uniformly and unilaterally forced upon its member/borrowers. TEG continues to collect the tax from its members and pay it to New York State.

46. As set forth above, by means of their Commitment Letters, TEG charges and collects from member/borrowers for payment of the Mortgage Tax under the pretext that it is a required fee.

47.     While TEG is free to pay the Mortgage Tax without objection, it may not pass the cost of that unlawful tax onto Plaintiff and other members of the Class under the pretext that it is a "required fee." As a result of TEG's passing the Mortgage Tax onto member/borrowers, Plaintiff and other members of the Class have been injured.

## PLAINTIFF'S STATE COURT LITIGATION

48.     Plaintiff commenced an action in the New York Supreme Court challenging the imposition of the Mortgage Tax on or about October 30, 2017, by filing and serving a summons and complaint. On or about January 3, 2018, Defendants moved to dismiss the complaint. On or about March 7, 2018, Plaintiff opposed the motion and cross-moved for summary judgment, pursuant to CPLR § 3211(c). Prior to the return date of both motions, on or about July 9, 2018, Plaintiff moved for class certification. Defendants moved to stay the motion for class certification on September 14, 2018, which motion Plaintiff opposed.

49.     In the state court action, Plaintiff argued that the *Hudson Valley* decision, while arguably supportable at the time it was issued, based upon the then unsettled state of federal law (which consisted of just three cases), could no longer be deemed good law in light of subsequent federal decisions, including the decision of the Sixth Circuit that reversed the sole decision upon which the *Hudson Valley* court had relied.

50.     Every one of those post-*Hudson Valley* decisions rejected the argument, adopted in *Hudson Valley*, that an excise or privilege tax was excluded from an exemption from "all taxation." Indeed, among the nine appellate courts, there was not even a single dissent. Thus, sixty federal judges have addressed the issue before the court in *Hudson Valley*, and all sixty have unanimously rejected the position adopted by that court.

51. The decisions reached by the federal appellate courts have not been close. Such courts have characterized the argument endorsed by the *Hudson Valley* court as "arcane," and contrary to "common sense," as "very strange," as "fundamentally incompatible with the statutory text," and, most pointedly, as "absurd." In short, it cannot be reasonably argued that *Hudson Valley* in any way reflects current federal law.

52. Under New York law, with respect to the interpretation of federal statutes, such as the FCU Act, a New York court, even in the absence of a controlling United States Supreme Court decision, is bound to apply a rule established by lower courts if those courts are in agreement or where their decisions are uniform. Thus, with respect to the immunity of FCUs, which is a federal issue, New York courts are "bound" to follow uniform federal law, even if established by lower and intermediate courts.

53. Plaintiff's claim in the state court action was that, in the period between the *Hudson Valley* decision and the filing of the complaint, the law had completely changed. *Hudson Valley*, while arguably defensible at the time it was issued, was (and is) no longer good law because the sole decision upon which it had relied had been reversed, and thereafter had been expressly and forcefully rejected by every court, numbering in the dozens, to address the claim at issue.

54. Defendants moved to dismiss the case on the pleadings, arguing that *Hudson Valley* precluded the trial court from considering the post-*Hudson Valley* jurisprudence, and that, in addition, Plaintiff lacked standing to assert the claim.

55. The trial court rejected the latter argument, recognizing that plaintiff had at least the status of an equitable subrogee of TEG, and therefore had standing to sue. The Supreme Court also recognized that there were "conflicting post-*Hudson* decisions by the lower federal courts not within this jurisdiction" that called the *Hudson Valley* decision into question. Nevertheless,

the trial court declined to address the claim asserted by Plaintiff, explaining, in its opinion dismissing the case, that it was "bound by the decision of the Court of Appeals in *Hudson*, notwithstanding" the subsequent caselaw.

57. Plaintiff appealed that decision to the Appellate Division. The intermediate appellate court agreed with Defendants. First, the court construed respondents' motion as a motion for declaratory judgment, as opposed to a motion to dismiss -- a course of action the court deemed appropriate because there were no relevant issues of fact. Then, it affirmed the decision of the trial court. The appellate court explained that it too was powerless to address Plaintiff's legal arguments as it was "bound by the Court of Appeals' decision in *Hudson Val. Fed. Credit Union*, despite conflicting federal intermediate court decisions which post-date it."

57. Plaintiff sought discretionary review in the New York Court of Appeals, the only tribunal in New York competent to revisit *Hudson Valley*. The Court of Appeals denied review without providing any reasoning.

58. Because the trial court and the Appellate Division were powerless to consider plaintiff's claims, and because the only court competent to adjudicate plaintiff's claims, the New York Court of Appeals refused to hear them, Plaintiff did not have an opportunity to have its claims heard. Even if the lower courts agreed with Plaintiff's claims, they could not give them a hearing. Only the Court of Appeals could address Plaintiff's claims but refused to do so. As a consequence, Plaintiff did not have a plain and certain remedy in state court.

59. Plaintiff was never given a full hearing and judicial determination at which he might raise any and all constitutional objections to the tax. The lower courts both determined that they could not address the claims and law cited by Plaintiff absent some direction from the Court of Appeals, and the Court of Appeals, the only court that could give a full hearing to the

Plaintiff's claims, refused to do so. As a consequence, the state courts did not provide a "plain, speedy and efficient remedy" for the violation of plaintiffs' federal constitutional protections.

## CLAIM FOR RELIEF

### (Against all Defendants)

60.    Plaintiff repeats and realleges paragraphs 1 through 59 as if fully set forth herein. As set forth above, the FCU Act precludes and forbids the Defendants from imposing the Mortgage Tax on TEG and other federal credit unions and mortgages that they issue in connection with mortgage loans that they make and have made to their members.

61.    The Defendants nevertheless have imposed the Mortgage Tax upon TEG and other federal credit unions in New York State, and such tax has been passed by the federal credit unions onto their members and borrowers.

62.    The imposition of the Mortgage Tax is unlawful and in contravention of the Federal Credit Union Act, U.S. Supreme Court precedent and the Supremacy Clause of the United States Constitution.

63.    Plaintiff and other members of the Class have been damaged by the imposition of the Mortgage Tax. They have paid a Mortgage Tax that is unlawful and will continue to do so in the future.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully request that the Court enter judgment in its favor against Defendants, and issue an order containing the following relief:

(A)    A declaration that TEG and its members, and other New York State federal credit unions and their members, are exempt, pursuant to the FCU Act, from imposition of the

Mortgage Tax on mortgages given by them to secure loans, and that the payment of the Mortgage Tax is not payment of a required fee;

    (B)    An order certifying the Plaintiff Class;

    (C)    An order awarding Plaintiff and the Class refunds of the Mortgage Tax that they have unlawfully paid;

    (D)    An order awarding Plaintiff's attorneys' fees; and,

    (E)    Such other and further relief that the Court deems just and proper.

Dated:    Millbrook, New York
            October 7, 2025

PAUL QUARTARARO, ESQ., PLLC

*/s/ Paul Quartararo*
Paul Quartararo (PQ-3278)

Paul Quartararo, Esq., PLLC
3278 Franklin Avenue, Suite 5
PO Box 65
Millbrook, NY 12545
(845) 605-1355

LAW OFFICES OF JOHN F. HARNES PLLC
John F. Harnes (JH-5398)
527 Route 22, Suite 2
Pawling, NY 12564
(845) 200-3909
jfharnes@harneslaw.com

*Attorneys for Plaintiff*

**CORPORATE VERIFICATION**

STATE OF NEW YORK       )
                        ) SS:
COUNTY OF DUTCHESS      )

Sean O'Donnell, being duly sworn, deposes and says that he is the President/CEO of O'Donnell & Sons, Inc., the corporation described in the within action ("Plaintiff"); that he has read the foregoing Verified Complaint and is familiar with the contents thereof; that the same is true to his own knowledge, except as to matters therein stated to be alleged upon information and belief, and that as to those matters he believes to be true, and that the source of his belief as to such matters is the books and records of the Plaintiff. This Verification is made by Deponent because Plaintiff is a New York corporation and Deponent is the President/CEO thereof.

**O'DONNELL & SONS, INC.**

_____
Sean O'Donnell, President / CEO

Sworn to before me this
8 day of October, 2025

_____
Notary Public

PAUL M. QUARTARARO
NOTARY PUBLIC-STATE OF NEW YORK
No. 02QU4974654
Qualified in Dutchess County
My Commission Expires 11-19-26