UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
O'DONNELL & SONS, INC., *on behalf of itself and all persons similarly situated*,

Plaintiff,

- against -

NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, *et al.*,

Defendants.
-------------------------------------------------------------x

**OPINION & ORDER ON MOTION TO DISMISS**

No. 25-CV-8874 (CS)

Appearances:
John F. Harnes
Law Offices of John F. Harnes PLLC
Pawling, New York

Paul Quartararo
Paul Quartararo, Esq., PLLC
Millbrook, New York
*Counsel for Plaintiff*

Stephanie Costa
Assistant Attorney General
New York, New York
*Counsel for Defendants*

Seibel, J.

Before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint. (ECF No. 18.) For the reasons set forth below, the motion is granted.[1]

## I. BACKGROUND

For purposes of the motion, I accept as true the facts, but not the conclusions, set forth in Plaintiffs' Amended Complaint. (ECF No. 15 ("AC").)

---

[1] Plaintiff also filed a letter motion requesting oral argument. (ECF No. 22.) That motion is denied.

## A. **Facts**

On November 9, 2023, Plaintiff O'Donnell & Sons, Inc., a New York corporation, obtained a mortgage on real property located in Dutchess County, New York, from TEG Federal Credit Union ("TEG"). (AC ¶ 1.) As part of that transaction and under its mortgage commitment letter with TEG, Plaintiff paid $5,570 pursuant to New York Tax Law §§ 253 and 253-a, also known as New York's Mortgage Recording Tax (the "MRT"). (*Id.* ¶¶ 1, 29, 38-39.) The MRT imposes "a tax of fifty cents for every $100 of principal debt" upon the recording of a mortgage of real property situated within New York State. N.Y. Tax Law §§ 253(1), 257. (*See* AC ¶ 16.) New York's courts have long determined that the MRT is not a tax on the mortgage itself but on the "privilege" of recording the mortgage. (*See* AC ¶¶ 17-22 (detailing the state constitutional issue that led to this interpretation of New York law).)

The statute does not say who is required to pay the tax, but Plaintiff alleges that the "legal incidence" of the tax most naturally falls on the lender. (*Id.* ¶ 23.) Other provisions in New York's tax code prevent a mortgage from being recorded, released, discharged, received into evidence, assigned, or extended if the MRT has not been paid, and New York treats any unrecorded mortgage as void against a subsequent good faith purchaser or lienholder. (*Id.* ¶ 24.) As a result, a mortgage issued without payment of the MRT, and therefore without being recorded, is "worthless" to the lender who issues it. (*Id.*)

To enforce the collection of the MRT, the New York Attorney General may maintain an action against the lender or, where the borrower and lender have agreed that the borrower will pay, against the borrower. (*Id.* ¶ 25.) Typically, federal credit unions ("FCU"s) like TEG require as a contractual term of their mortgage commitments that borrowers procure a lenders' title insurance policy and pay all required fees, including the MRT, to obtain the mortgage loan.

(*Id.* ¶¶ 28-29.) Plaintiff says that this term effectively means that borrowers are paying the MRT "involuntarily" and "under compulsion," even though FCUs as lenders should be "solely answerable" for the tax. (*Id.* ¶ 29)

The problem with this passing through of the MRT, as Plaintiff sees it, is not only that borrowers are footing the bill for FCUs, but also that a federal statute prevents New York from taxing FCUs in the first place. (*Id.* ¶ 35.) The Federal Credit Union Act ("FCU Act") established the framework to create and regulate FCUs, which are member-owned and managed cooperative associations that, among other activities, offer credit to members. (*Id.* ¶ 30.) Most loans that FCUs issue are mortgage loans. (*Id.* ¶ 32.) The FCU Act provides, in pertinent part, that FCUs and "their property, their franchises, capital, reserves, surpluses, and other funds, and their income" are "exempt from all taxation now or hereafter imposed by . . . any State," except that their "real property and any tangible personal property" may be taxed. 12 U.S.C. § 1768. (*See* AC ¶ 34.) New York nevertheless continues to require payment of the MRT in connection with mortgages issued by FCUs. (*See* AC ¶¶ 38-39.) But FCUs like TEG have little incentive to challenge the MRT because they can pass responsibility onto borrowers like Plaintiff. (*See id.* ¶ 64.)

In 2008, however, Hudson Valley Federal Credit Union sought to challenge the MRT by arguing that the FCU Act exempted FCUs from paying the MRT and that they were immune from state taxation as an instrumentality of the federal government. (*Id.* ¶¶ 40-41.) At all three levels of New York's courts, Hudson Valley lost its challenge. (*Id.* ¶¶ 43-45, 50.) In *Hudson Valley Federal Credit Union v. N.Y. State Department of Taxation & Finance*, 20 N.Y.3d 1 (2012) ("*Hudson Valley*"), the Court of Appeals rejected Hudson Valley's arguments. (*Id.* ¶ 50.) First, it found that the FCU Act does not prohibit taxing FCUs' mortgages because mortgages are

not included in the list of property exempted from the tax – unlike other statutes that specifically exempt mortgages – and because mortgages are not "property" under the FCU Act. *See Hudson Valley*, 20 N.Y.3d at 2-5. (*See also* AC ¶ 51.) It further concluded that FCUs are not federal instrumentalities exempt from taxation under the Supremacy Clause. *See Hudson Valley*, 20 N.Y.3d at 6-7. (*See also* AC ¶ 52.) In what Plaintiff describes as an "enigmatic footnote," (AC ¶ 53), the court – based on its prior holdings that the MRT was a tax on the privilege of recording, not on the mortgage – distinguished two cases that had held that a tax on the recording of an entity's instrument was the same as a tax on the entity. *See Hudson Valley*, 20 N.Y.3d at 5 n.5. On Plaintiff's read of the case, this footnote renders the rest of the opinion *dictum*, because if the MRT is a tax on recording a mortgage, not on the mortgage itself, it is irrelevant whether the FCU Act prohibits taxes on FCUs' mortgages or whether FCUs are federal instrumentalities. (AC ¶¶ 53-54.)

In that footnote, the Court of Appeals reaffirmed long-held New York precedent about how the MRT is properly characterized, and observed that three federal courts had reached conflicting conclusions about similar types of taxes – two agreeing with Hudson Valley and one supporting the court's view. *See Hudson Valley*, 20 N.Y.3d at 5 n.5. (*See also* AC ¶¶ 53-54.) Since *Hudson Valley*, however, federal courts have rejected similar reasoning when analyzing what Plaintiff asserts is comparable language in other federal statutes applied to comparable tax schemes. (AC ¶ 58.)[2] Further, the federal case on which the Court of Appeals relied in its

---

[2] Most, if not all, of these cases involve taxes on the sale or transfer of real property imposed on the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac"). *See, e.g.*, *Bd. of Cnty. Comm'rs of Kay Cnty., Okla. v. Fed. Hous. Fin. Agency,* 754 F.3d 1025, 1027 (D.C. Cir. 2014); *Town of Johnston v. Fed. Hous. Fin. Agency*, 765 F.3d 80, 82 (1st Cir. 2014). The statute granting Fannie Mae and Freddie Mac tax exemptions is "similar [but] not identical" to the FCU Act's tax exemption.

footnote was vacated and remanded. *See County of Oakland v. Fed. Hous. Fin. Agency*, 716 F.3d 935, 944 (6th Cir. 2013). (*See also* AC ¶¶ 59-60.) Plaintiff says federal courts have "skewered" *Hudson Valley*'s logic and found that "it fails to comport with common sense." (AC ¶¶ 61, 63.)

Plaintiff now brings the instant action to challenge the MRT in connection with its 2023 mortgage from TEG. (*Id.* ¶ 1.) But this is not the first time a court has heard Plaintiff's objection to having to pay the MRT. In 2017, Plaintiff commenced a lawsuit in New York's state courts to challenge the MRT's alleged conflict with the FCU Act and the Supremacy Clause (the "New York Action").[3] (AC ¶ 67; *see* ECF No. 19-2 ("New York Compl.") ¶¶ 41-44.)[4] There Plaintiff argued that the federal court decisions subsequent to *Hudson Valley* contradicted that decision. (AC ¶ 69; *see* ECF No. 15-2 (the "New York Supreme Court Decision") at 5.) But the New York Supreme Court dismissed Plaintiff's complaint, finding that *Hudson Valley* was binding precedent. (*See* New York Supreme Court Decision at 4-6; AC ¶ 73.) Plaintiff next appealed to the Appellate Division, but it too held that it was bound by *Hudson Valley* even if

---

*County of Erie v. Fed. Hous. Fin. Agency*, No. 13-CV-284, 2014 WL 795967, at *5 (W.D.N.Y. Feb. 27, 2014).

[3] In the New York Action, Plaintiff challenged its payment of the MRT in connection with a mortgage that it obtained from TEG in 2017 on a different property. (ECF No. 19-2 ¶ 1.)

[4] ECF No. 19-2 is the complaint Plaintiff filed in 2017 in the New York Action in Supreme Court, Dutchess County, which Defendants included in support of their motion to dismiss. I may take judicial notice of the complaint and the proceedings that followed in New York's courts. *See Talenthub Worldwide, Inc. v. Talenthub Workforce, Inc.*, No. 24-CV-6264, 2025 WL 2578385, at *1 (S.D.N.Y. Sep. 5, 2025) ("The Court also takes judicial notice of the complaint and proceedings in the related New York state actions."); *Small v. LOGS Legal Grp. LLP*, 826 F. Supp. 3d 377, 387 n.4 (E.D.N.Y. 2026) ("The Court takes judicial notice of the documents filed in the State Court Action.").

subsequent federal courts' decisions conflicted with it. *See O'Donnell & Sons, Inc. v. N.Y. State Dep't of Tax'n & Fin.*, 147 N.Y.S.3d 636, 637-38 (App. Div. 2021). (*See also* AC ¶ 74.)[5]

Plaintiff says that because of *Hudson Valley*, New York's Supreme Court and Appellate Division were "powerless" to consider its claims and that only the Court of Appeals, as New York's highest court, could adequately address the matter. (AC ¶ 76.) Accordingly, Plaintiff sought discretionary review before the Court of Appeals, but it denied Plaintiff leave to appeal. *See O'Donnell & Sons, Inc. v. N.Y. State Dep't of Tax'n & Fin.*, 37 N.Y.3d 912 (2021). (*See also* AC ¶ 75.) Plaintiff's petition for review at the U.S. Supreme Court was also denied. *See O'Donnell & Sons, Inc. v. N.Y. State Dep't of Tax & Fin.*, 142 S. Ct. 2869 (2022).

### B. Procedural History

Plaintiff commenced the instant action by filing its complaint on October 27, 2025. (ECF No. 1.) Defendants responded with a pre-motion letter in anticipation of their motion to dismiss. (ECF No. 11.) In light of the parties' joint waiver of the pre-motion conference requirement and proposed schedule for amendment and briefing, (*id.*), I waived the conference and adopted the schedule. (ECF No. 12.) Plaintiff filed its AC, (ECF No. 15), and the instant motion followed, (ECF No. 18).

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Arar v. Ashcroft*, 532 F.3d 157, 168

---

[5] In affirming the Supreme Court's dismissal, the Appellate Division also remanded with instructions to enter a declaratory judgment "that mortgages issued by New York State federal credit unions are not exempt from the imposition of the New York State mortgage recording tax." *See O'Donnell & Sons*, 147 N.Y.S.3d at 637-38. (*See also* AC ¶ 74.)

(2d Cir. 2008), *vacated and superseded on other grounds on reh'g en banc*, 585 F.3d 559 (2d Cir. 2009). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)); *see Seljak v. Pervine Foods, LLC*, No. 21-CV-9561, 2023 WL 2354976, at *4 (S.D.N.Y. Mar. 3, 2023). "The party invoking federal jurisdiction bears the burden of establishing" that it exists. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," *Fountain v. Karim,* 838 F.3d 129, 134 (2d Cir. 2016), "but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it," *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd on other grounds*, 561 U.S. 247 (2010). The Court "may refer to evidence outside the pleadings" in resolving a motion under Rule 12(b)(1). *Makarova*, 201 F.3d at 113.

**B. <u>Motion to Dismiss for Failure to State a Claim</u>**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Twombly*, 550 U.S. at 555. While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

Plaintiff brings two claims in this action: (1) a standalone claim against Defendant Amanda Hiller, the Acting Tax Commissioner of the New York State Department of Taxation and Finance, in her official capacity, for a declaratory judgment that TEG, its members, and all FCUs and their members are exempt from the MRT pursuant to the FCU Act and the Supremacy Clause, (AC ¶¶ 78-83), and (2) a claim against Hiller and Defendants the State of New York and the New York State Department of Taxation and Finance for identical declaratory relief but premised on the theory that imposition of the MRT in violation of the FCU Act and the Supremacy Clause is an unlawful taking under the Fifth Amendment and a violation of Plaintiff's Fourteenth Amendment due process right, (*id.* ¶¶ 84-89).

Defendants argue that Plaintiff's AC should be dismissed for a number of reasons, including that Plaintiff's claim is barred by *res judicata*. I agree with Defendants that Plaintiff is precluded from bringing its instant claims, so I need not reach Defendants' other arguments, including whether Plaintiff lacks standing under Article III. *See Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 66 F.4th 365, 370 & n.2 (2d Cir. 2023) (district courts are "permitted to bypass Article III standing" and "dismiss actions based on non-jurisdictional, non-merits grounds," such as issue and claim preclusion, when faced with "a difficult or novel question of constitutional jurisdiction"); *Rosenthal v. Roosevelt Island Operating Corp.*, No. 23-CV-9660, 2025 WL 1518240, at *3 & n.3 (S.D.N.Y. May 28, 2025) (declining to address sovereign immunity and merits defenses where *res judicata* bars claim), *appeal filed*, No. 25-1667 (2d Cir. July 9, 2025).

*Res judicata*, or claim preclusion, means that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). "When applying the doctrine of *res judicata*, a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Ho-Shing v. Budd*, No. 17-CV-4633, 2018 WL 2269245, at *4 (S.D.N.Y. May 17, 2018), *aff'd*, 771 F. App'x 79 (2d Cir. 2019) (summary order). Put another way, "[w]here there is a final state court judgment, a federal court looks to that state's rules of *res judicata* to determine the preclusive effect of that judgment." *AmBase Corp. v. City Investing Co. Liquidating Tr.*, 326 F.3d 63, 72 (2d Cir. 2003). Because the Defendants rely on the New York Action for their claim preclusion argument, New York's rules apply.

Under New York law, to succeed on the affirmative defense of *res judicata*, a party "must show (1) the previous action involved an adjudication on the merits; (2) the previous

action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been raised, in the prior action." *Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 290 (E.D.N.Y. 2024); *Ho-Shing*, 2018 WL 2269245, at *4; *see Team Kennedy v. Berger*, 748 F. Supp. 3d 200, 211 (S.D.N.Y. 2024), *appeal withdrawn sub nom.*, *Kennedy v. Berger*, No. 24-2385, 2024 WL 5088310 (2d Cir. Oct. 8, 2024); *Simmons v. Trans Express Inc.*, 355 F. Supp. 3d 165, 171 (E.D.N.Y. 2019), *aff'd*, 16 F.4th 357 (2d Cir. 2021). All three elements are met here.

First, and despite Plaintiff's contention that New York's lower courts were "powerless" to consider its claims, it cannot seriously be argued that the New York Action resulted in anything but a final adjudication on the merits. In the New York Action, Plaintiff sought a declaration that TEG, its members, and other FCUs and their members were exempt from the MRT pursuant to the FCU Act and the Supremacy Clause. (New York Compl. at 13-14.) The New York Supreme Court ruled that Plaintiff's complaint should be dismissed in light of the Court of Appeals' *Hudson Valley* decision. (New York Supreme Court Decision at 6.) After Plaintiff appealed that order, the Appellate Division affirmed and directed entry of an order declaring "that mortgages issued by New York State federal credit unions are not exempt from the imposition of the New York State mortgage recording tax." *O'Donnell & Sons*, 147 N.Y.S.3d at 637. The New York Court of Appeals declined to review that decision. *See O'Donnell & Sons*, 37 N.Y.3d 912. (*See also* AC ¶ 75.) Thus, the New York courts' decisions were "not merely a dismissal for a technical pleading defect, but a dismissal manifestly on the merits." *Pitcock v. Kasowitz, Benson, Torres & Friedman, LLP*, 915 N.Y.S.2d 239, 241 (App. Div. 2011). Plaintiff supplies no authority suggesting that the fact that they reached their decisions based on application of precedent makes those decisions any less merits-based.

Second, the same adverse parties here – or parties in privity with those parties – were adverse parties in the New York Action. Plaintiff and two of the three Defendants in the instant action – the New York State Department of Taxation and Finance and the State of New York – were parties to the New York Action. (*See* New York Compl. ¶¶ 1-3; AC ¶¶ 1-3.) Hiller, who is being sued in her official capacity, was not a party to the New York Action but is in privity with a party to the New York Action. "Government officials sued in their official capacities are generally considered to be in privity with the government entity that they serve." *Fabian v. Pappalardo*, 395 F. Supp. 3d 257, 264 (S.D.N.Y. 2019). "[W]hen officials sued in their official capacities leave office, their successors automatically assume their role in the litigation. The real party in interest is the government entity, not the named official." *Lewis v. Clarke*, 581 U.S. 155, 162 (2017). In the New York Action, Plaintiff sued Nonie Manion, who at the time was the Acting Tax Commissioner of the New York State Department of Taxation and Finance, in her official capacity. (*See* New York Compl. ¶ 4.) Hiller is therefore in privity with Manion, given that Hiller assumed Manion's role in all litigation involving Manion in her official capacity, and both Hiller and Manion were in privity with the government-entity Defendant they served.

Third, the claims asserted in the instant action were, or could have been, raised in the New York Action. "New York courts use a transactional analysis approach to determine whether a claim could have been raised in the prior litigation," meaning that "any subsequent claim that arises out of the same transaction or series of transactions as the adjudicated claim is barred, even if based upon different theories or if seeking a different remedy." *Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machs. Corp.*, 110 F.4th 106, 114 (2d Cir. 2024). "In applying the transactional approach, New York courts analyze whether the claims turn on facts that are related in time, space, origin, or motivation, whether they form a convenient trial unit,

and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Stensrud v. Rochester Genesee Reg'l Transp. Auth.*, 669 F. Supp. 3d 186, 190 (W.D.N.Y. 2023), *aff'd*, No. 23-765, 2024 WL 2104604 (2d Cir. May 10, 2024) (summary order).

Plaintiff's two causes of action in the instant action either were or could have been raised in the New York Action. Plaintiff's first claim, which is asserted against only Hiller and alleges that imposition of the MRT violates the FCU Act and the Supremacy Clause, is virtually identical to the claim raised in the New York Action and seeks nearly identical declaratory relief. (*Compare* AC ¶¶ 78-83, *with* New York Compl. ¶¶ 41-44.) It therefore clearly satisfies New York's transactional analysis. Plaintiff's second claim, asserted against all Defendants, could have been raised in the New York Action. That claim alleges that the imposition of the MRT in violation of the FCU Act and Supremacy Clause amounts to an unlawful taking under the Fifth Amendment and violates Plaintiff's rights under the Fourteenth Amendment's due process clause. (*See* AC ¶ 88.) Neither theory was raised in the New York Action but both clearly could have been, given that they are premised on the tax unlawfully violating the FCU Act and the Supremacy Clause – the exact issue that New York's courts squarely addressed in the New York Action. And it is irrelevant that the New York Action also sought damages and this action seeks only a declaratory judgment. *Res judicata* applies even where the second lawsuit seeks different relief or relies on different theories where, as here, both cases are "nevertheless . . . grounded on the same gravamen of the wrong." *Smith v. Russell Sage Coll.*, 54 N.Y.2d 185, 192 (1981). *Res judicata* therefore bars both of Plaintiff's claims.[6]

---

[6] Defendants argue, (Ds' Mem. at 15), and Plaintiff does not contest, that Plaintiff's claims are barred regardless of the fact that Plaintiff took out the underlying mortgage subject to

Plaintiff does not meaningfully dispute that it is precluded from litigating its claims, and instead relegates its discussion of *res judicata* to less than one page at the end of its opposition. (*See* ECF No. 21 ("P's Opp.") at 27.) There Plaintiff argues that it did not get a "full hearing and judicial determination" to "raise any and all constitutional objections to the tax." (*Id.*) Plaintiff largely relies on *West v. Ruff*, 961 F.2d 1064 (2d Cir. 1992), to argue that *res judicata* does not apply where a party lacked a full and fair opportunity to litigate a claim.[7] Plaintiff is correct that "a later claim is not precluded when the first court lacked the power to grant all the relief sought in the later action, or when, as [Plaintiff] asserts here, a party lacked a full and fair opportunity to litigate the issue or claim sought to be precluded," *id*. at 1065, but those principles do not aid it

---

the MRT in the instant case after the New York Action reached a final disposition. "[C]ourts have consistently applied *res judicata* to claims extending over time or involving seriatim transactions and events so long as they are sufficiently related." *Waldman v. Vill. of Kiryas Joel*, 39 F. Supp. 2d 370, 379 (S.D.N.Y. 1999), *aff'd*, 207 F.3d 105, 113 (2d Cir. 2000) (*res judicata* applies where new complaint consists of "nothing more than additional instances of what was previously asserted"). New York's transactional approach to *res judicata* "must be given a flexible, common-sense construction that recognizes the reality of the situation" and "courts must make a pragmatic distinction between, on the one hand, parties who bring multiple suits because different circumstances have caused different legal injuries than those previously litigated, and, on the other hand, parties who seek multiple bites at the apple." *Gilliam v. Discover Bank*, No. 25-CV-3063, 2026 WL 811279, at *6 (S.D.N.Y. Mar. 23, 2026). Plaintiff's challenge to the MRT in the New York Action was premised on its paying of the tax in connection with a mortgage obtained from TEG in 2017. (New York Compl. ¶ 1.) The instant action is premised on a 2023 mortgage Plaintiff obtained from the same FCU subject to the same state tax. (*See* AC ¶ 1.) To allow Plaintiff to bring identical claims in a new action every time it takes out a new mortgage "would be to permit an absurd waste of judicial resources and to remove any sense of finality." *Mahmood v. Rsch. in Motion Ltd.*, 905 F. Supp. 2d 498, 506 (S.D.N.Y. 2012), *aff'd*, 515 F. App'x 891 (Fed. Cir. 2013). "*Res judicata* does not work that way." *Id.* And even if Plaintiff could bring a new lawsuit each time it obtained a new mortgage from an FCU, collateral estoppel would, as discussed below, still bar Plaintiff from litigating whether the MRT violates the FCU Act and Supremacy Clause. *See Team Kennedy*, 748 F. Supp. 3d at 213.

[7] Plaintiff also refers in passing to *Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503 (1981), and *Reich v. Collins*, 513 U.S. 106 (1994), in this portion of its opposition, but neither case addresses *res judicata* or issue preclusion.

here. *West* involved a *pro se*, incarcerated plaintiff who commenced parallel state and federal actions stemming from the same incident. *See id.* The Second Circuit held that *res judicata* did not bar West's federal claim even though judgment was entered against him in the state case, because he did not have a full and fair opportunity to litigate the state claim. *Id.* at 1066. The Circuit's rationale for not applying *res judicata* relied on five factors unique to that case:

> (1) the appointment of counsel in the federal matter pursuant to *Hodge*[*v. Police Officers*, 802 F.2d 58 (2d Cir. 1986),] reflected a finding that West's claim had colorable substance and could not be adequately presented *pro se*; (2) West had at best a single day's notice of his state trial; (3) his appointed counsel in a factually identical federal case was never notified of the parallel state litigation; (4) the [state court] judge had no notice of the potential availability of appointed counsel; and (5) West has shown prejudice in the availability of an eyewitness in circumstances in which he seems to have had neither discovery nor sufficient notice to obtain the presence of the witness.

*Id.* at 1065-66. Plaintiff's alleged lack of a fair opportunity to litigate its claim in the New York Action comes nowhere near the difficulties that the plaintiff in *West* faced. At all stages of the New York Action, Plaintiff was represented by counsel, (*see, e.g.*, New York Compl. at 14; ECF No. 21-1 at 94-95 (Plaintiff's Petition for a Writ of Certiorari to the U.S. Supreme Court)), and Plaintiff points to no inadequacies with the state courts' procedures or handling of Plaintiff's claims – such as being given one day's notice for trial. Thus, there is no indication here that Plaintiff had anything but a full and fair opportunity to litigate in the New York Action.

Plaintiff's argument that the New York Supreme Court and Appellate Division lacked the power to address Plaintiff's legal arguments because only the Court of Appeals could revise its *Hudson Valley* holding, (*see* P's Opp. at 20-21), is also of no moment. Plaintiff cites no authority for the proposition that trial and intermediate appellate courts are rendered "powerless" – and therefore their judgments have no *res judicata* effect – simply because they apply

controlling precedent to the merits of a case.[8] It may be true that *res judicata* "will not be applied if the initial forum did not have the power to award the full measure of relief sought in the later litigation." *Razzano v. Remsenburg-Speonk Union Free Sch. Dist.*, 751 F. App'x 24, 27 (2d Cir. 2018) (summary order). But here the courts in the New York Action had the power to award the relief Plaintiff seeks – a declaratory judgment on the constitutionality of the act – and indeed did exercise that power, albeit against Plaintiff. *See O'Donnell & Sons*, 147 N.Y.S.3d at 637 (directing entry of declaratory judgment order). Lower courts in New York routinely must apply precedent from the Court of Appeals, and the preclusive effect of their judgments is not negated even where the Court of Appeals in its discretion declines to review a party's claim. *See Fuchsberg & Fuchsberg v. Galizia*, 300 F.3d 105, 110 (2d Cir. 2002); *Larsen v. Schultz*, 720 N.Y.S.2d 625, 626 (App. Div. 2001). If Plaintiff were correct that rulings based on binding precedent lack *res judicata* effect, parties would routinely get multiple bites at the apple. *See Sure-Snap Corp. v. State St. Bank & Tr. Co.*, 948 F.2d 869, 870 (2d Cir. 1991) ("Restraining litigious plaintiffs from taking more than 'one bite of the apple' has been our avowed purpose since the common law doctrine of *res judicata* first evolved."); *Fernando v. Wilmington Sav.*

---

[8] Elsewhere in its brief, Plaintiff relies on cases addressing the Tax Injunction Act's applicability, not *res judicata*, to argue that the trial court and Appellate Division in the New York Action were powerless to grant it relief. (*See* P's Opp. at 21-23.) In those cases, courts analyzed whether state procedural limits and administrative funneling for review of tax schemes ensured a "plain, speedy and efficient" state-court remedy. *See, e.g.*, *A.F. Moore & Assocs., Inc. v. Pappas*, 948 F.3d 889, 892-96 (7th Cir. 2020); *Barringer v. Griffes*, 964 F.2d 1278,1280-84 (2d Cir. 1992). That is a different question from whether a party had a full and fair opportunity to litigate a claim for purposes of *res judicata*. And even if the standards were the same, Plaintiff would not have met its burden of showing that it lacked a "plain, speedy and efficient" remedy because "[t]he Supreme Court has determined that New York provides sufficient remedies for taxpayers in the state courts," including when seeking "a declaratory judgment . . . that the tax [at issue] is unconstitutional." *Miller v. State of N.Y. Div. of Tax Appeals*, 480 F. Supp. 2d 574, 579 (E.D.N.Y. 2007).

*Fund Soc'y, FSB*, 175 N.Y.S.3d 260, 261-62 (App. Div. 2022) (transactional approach to claim preclusion "seeks to prevent litigants from taking two bites at the apple").

Again, Plaintiff had the opportunity to litigate the lawfulness and constitutionality of the MRT in New York, and both the Supreme Court and Appellate Division found Plaintiff's claim to be without merit given *Hudson Valley*. (New York Supreme Court Decision at 6.) *See O'Donnell & Sons*, 147 N.Y.S.3d at 637-38. Plaintiff sought review by the Court of Appeals, which denied Plaintiff leave to appeal, *see O'Donnell*, 37 N.Y.3d 912, and the United States Supreme Court then similarly denied review, *see O'Donnell & Sons*, 142 S. Ct. 2869. Far from suggesting that the lower courts were "powerless" to give Plaintiff the remedy it sought, the sequence of events in the New York Action is unremarkably typical of how courts apply precedent. The *res judicata* effect of the New York Action is not nullified simply because Plaintiff believes that the New York courts were incorrect. *See Burton v. Niagara Frontier Transp. Auth.*, No. 11-CV-971, 2013 WL 3423754, at *3 (W.D.N.Y. July 8, 2013) ("It is well established that the *res judicata* effect of a final judgment on the merits is not altered by the fact that the prior decision may have been wrong."). And if the U.S. Supreme Court believed New York was improperly applying federal law, it had the opportunity to weigh in on Plaintiff's claims. They are accordingly barred by *res judicata.*

To the extent Plaintiff may be arguing that the state court proceedings themselves violated his right to due process, that argument fails. Plaintiff may be including allegations that the New York courts were powerless in an attempt to repackage its FCU Act/Supremacy Clause claim into a procedural due process claim. (*See* AC ¶¶ 76-77, 83, 87; P's Opp. at 24 (citing cases like *Reich*).) Arguably, *res judicata* would not apply if Plaintiff were alleging injuries stemming

from the New York Action itself, but in that case, either collateral estoppel or the *Rooker-Feldman* doctrine would require that the AC be dismissed.

First, Plaintiff would be collaterally estopped from litigating the underlying merits of its argument that the MRT violates the FCU Act and the Supremacy Clause. Collateral estoppel, or issue preclusion, "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Team Kennedy*, 748 F. Supp. 3d at 213. Collateral estoppel applies "only if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Id.* The first element is clearly met, given that the Appellate Division stated unequivocally that "mortgages issued by New York State federal credit unions are not exempt from the imposition of the New York State mortgage recording tax." *O'Donnell & Sons*, 147 N.Y.S.3d at 637-38. And for the reasons previously discussed, the second element is met, as Plaintiff presents no facts that come close to suggesting it did not receive a fair shot at litigating this issue. Plaintiff's claim would therefore be dismissed. *See Whitfield v. City of N.Y.*, 760 F. Supp. 3d 126, 137 (S.D.N.Y. 2024) (dismissal appropriate where collateral estoppel applies and "it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law"), *appeal dismissed*, No. 25-245, 2025 WL 2238018 (2d Cir. June 2, 2025).

Second, any claim that the New York Action violated the Fourteenth Amendment would be barred by the *Rooker*-*Feldman* doctrine, which strips district courts of subject matter jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court

review and rejection of those judgments." *T. M. v. Univ. of Md. Med. Sys. Corp.*, 146 S. Ct. 1739, 1748 (2026). Thus, if Plaintiff were really alleging that the judgment in the New York Action itself violated its due process rights, that claim would be barred. In reality, Plaintiff is seeking only a declaration that the MRT is unlawful as a matter of federal law, (*see* AC ¶¶ 84-89), which is the exact issue on which Plaintiff lost in the New York Action years before initiating the instant lawsuit, *see O'Donnell & Sons*, 147 N.Y.S.3d at 637-38. Plaintiff alleges no procedural deficiencies in the New York Action akin to the "bait and switch" at issue in *Reich*, 513 U.S. at 111, or any inadequacies in New York's tax collection system that could give rise to an independent due process claim. Instead, Plaintiff seeks to transform its losing state court arguments into a Fourteenth Amendment claim in an attempt to have this Court offer appellate review. I decline to do so.

I make no comment on the merits of Plaintiff's claim, the courts' reasoning in the New York Action, or the rationale underpinning *Hudson Valley*. I find only that this Plaintiff cannot bring its claims to this Court after having already done so in state court. If Plaintiff wanted a federal court to decide the issues of federal law in the first instance, it should have filed its action in this Court in 2017. Plaintiff cannot upset the finality of the New York Action simply because it is unsatisfied with the result.

## IV. <u>LEAVE TO AMEND</u>

Finally, I consider whether Plaintiff should be granted leave to amend. Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of

amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended its complaint once, (ECF No. 15), after having the benefit of Defendants' pre-motion letter, (ECF No. 11), and waiving the opportunity for a pre-motion conference, (*id.*).[9] In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*."); *see also Baines v. Nature's Bounty (NY), Inc.*, No. 23-710-cv, 2023 WL 8538172, at *3 (2d Cir. Dec. 11, 2023) (summary order) (no abuse of discretion in denying leave to amend where plaintiffs "already amended their complaint once in the face of a pre-motion letter from Defendants," and then "requested leave to amend again in a single, boilerplate sentence without specifying what allegations they could add or how amendment would cure any deficiencies"); *Bardwil Indus. Inc. v. Kennedy*, No. 19-CV-8211, 2020 WL 2748248, at *4 n.2 (S.D.N.Y. May 27, 2020) (dismissing with prejudice where plaintiff amended following pre-motion letters that identified the deficiencies resulting in dismissal).

Moreover, Plaintiff has not asked to amend again or otherwise suggested that it is in possession of facts that would cure the deficiencies identified in this decision. *See*

---

[9] In granting Plaintiff and Defendants' request to waive the pre-motion conference, I advised Plaintiff that it would likely not receive another opportunity to amend as to the issues raised in the Attorney General's pre-motion letter. (*See* ECF No. 12.)

*TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint."); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice "in the absence of any indication that [plaintiff] could – or would – provide additional allegations that might lead to a different result . . . ."); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend); *GateGuard, Inc. v. Amazon.com Inc.*, No. 21-CV-9321, 2023 WL 2051739, at *21 (S.D.N.Y. Feb. 16, 2023) (denying leave to amend where plaintiff "already amended its complaint in response to [Defendants'] pre-motion letter detailing the bases for its anticipated motion to dismiss" and did not seek leave to amend again). Indeed, the problem with the claim "is substantive" and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see Morgan v. Monello*, No. 22-CV-3367, 2023 WL 4837911, at *10 (S.D.N.Y. July 28, 2023) ("Because [Plaintiff's] claims are barred by *res judicata*, better pleading will not cure their defects, and granting leave to amend would be futile."), *report and recommendation adopted*, 2023 WL 6389077 (S.D.N.Y. Oct. 2, 2023), *aff'd sub nom.*, *Morgan v. Hartman*, No. 23-7336-CV, 2025 WL 615166 (2d Cir. Feb. 26, 2025) (summary order).

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## V. **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to determinate the pending motions, (ECF Nos. 18, 22), and close the case.

**SO ORDERED.**

Dated: July 27, 2026
White Plains, New York

Cathy Seibel
CATHY SEIBEL, U.S.D.J.